UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                     **Plaintiff**               **SENTENCING MEMORANDUM**

    **v.**

**ABDELMAJI LABABNEH,**                **1:14-CR-189 (MAD)**
                **Defendant**

## BACKGROUND OF THE CASE

Abdelmaji Lababneh was charged in the United States District Court for the Northern

District of New York on or about January 21, 2014, and on August 14, 2014 he pled guilty to

Count One of the single count indictment - Conspiracy to Possess with Intent to Distribute

XLR-11 (synthetic marihuana) under 21 USC 846 and 841(a)(1) and (b)(1)(C). As discussed

below, the Court should find a Criminal History Category of II (rather than III) or, in the

alternative, find that the Criminal History Category over-represents the seriousness of Mr.

Lababneh's offense. In addition, based on the timing of the scheduling of XLR-11 and other

issues discussed below, the Court should treat the XLR-11 herein as if it were marihuana or

guidelines purposes. Finally, the Court should grant a downward variance based on the factors

discussed below and sentence Mr. Lababneh to a minimal period of incarceration.

## GUIDELINES SENTENCE

Although the Sentencing Guidelines are no longer mandatory, the Court is required to

consider them before imposing sentence. However, in *Gall v. United States*, 128 S. Ct. 586

(2007), the United States Supreme Court held that there is no presumption of reasonableness,

and the court must consider the Guidelines, but also consider all the factors in 18 USC 3553(a)

before imposing sentence.  In *United States v. Cavera*, 550 F.3d 180, 189, the Second Circuit

stated:

> "It is now ... emphatically clear that the Guidelines are guidelines - that is, they are truly
> advisory. A district court may not presume that a Guidelines sentence is reasonable;
> it must instead conduct its own independent review of the sentencing factors..."

According to the Presentence Investigation Report (PSR), the base level is 34, and the

Probation Department is recommending a two level increase under 3B1.1(c) for an organizer

role. With a three level reduction for Acceptance of Responsibility and a timely plea, the final

offense level according to the PSR is 33. The Probation Department found a Criminal History

Category of III, which results in a guidelines range of 168-210 months.

## THE CRIMINAL HISTORY CATEGORY SHOULD BE II

It is submitted that the Probation Department found five criminal history points based on

an erroneous interpretation of USSG 4A1.2. Three points were properly assigned based on Mr.

Lababneh's Bronx conviction for Money Laundering in the third degree, *based on the sale of*

*untaxed cigarettes*, for which he was sentenced to 1 1/3 – 4 years in prison. However, there

should not be any points assigned for the related federal conviction *for the sale of the same*

*untaxed cigarettes*.

Where two convictions are "related," or based on a "common scheme," the sentences

imposed thereon should not be counted separately for purposes of criminal history points. *United*

*States v. Dunn*, 431 F.3d 436 (5th Cir. 2005); *United States v. Irvin*, 369 F.3d 284 (3rd Cir. 2004);

*United States v. Moreno-Arredondo*, 255 F.3d 198 (5th Cir. 2001); *United States v. Hallman*, 23

F.3d 821 (3rd Cir. 1994); *United States v. Connor*, 950 F.2d 1267 (7th Cir. 1991).

In *Hallman*, supra, the Court held that a state forgery conviction and a federal stolen mail

conviction were part of a common scheme and could not be counted separately for sentencing

purposes under USSG 4A1.2, stating:

>"...Appellant's argument is that the conduct that led to his state sentence for forgery is part of the same scheme and conduct that led to his federal indictment on the count of possession of stolen mail.
>
>\*\*\*
>
>...[W]e believe that the focus of the inquiry is on the conduct and whether that conduct is related – is it part of a common scheme or plan? We agree with the Seventh Circuit's view that '*the Sentencing Commission ... intended a broad reading of 'related cases,' United States v. Connor*, 950 F.2d 1267, 1271 (7th Cir. 1991) (*finding that sentences given for federal conviction and state conviction were related...*)
>
>\*\*\*
>
>*We hold that the appellant's possession of this stolen mail was part of a common scheme and plan and that the prior sentence for forgery was for conduct that is related to [the federal offense].* ...It is reasonable to infer that the mail was stolen to find checks or other instruments that could be converted to use through forgery.
>
>Because we hold that the forgery conviction and [the federal conviction] are part of a common scheme or plan, the appellant's criminal history score warrants a reduction..." *Hallman*, supra, at 825-826, emphasis supplied.

The state and federal convictions at issue herein were clearly related and part of a common scheme and plan – in fact, they were based on not only *related* conduct, but *the very same* conduct – the sale of the same untaxed cigarettes. Therefore, based on *Hallman* and the other cases cited above, the Court should find that the two sentences should not be counted separately. This results in three total criminal history points, and a Criminal History Category of II, rather than III.

## ALTERNATIVELY, THE COURT SHOULD GRANT A VARIANCE OR DOWNWARD DEPARTURE BECAUSE THE CRIMINAL HISTORY CATEGORY OVER-REPRESENTS THE SERIOUSNESS OF MR. LABANEH'S CRIMINAL HISTORY

In the alternative, if the Court finds that the two sentences should be counted separately pursuant to USSG 4A1.2, then it is submitted that a Criminal History Category of III over-represents Mr. Lababneh's criminal history because the two offenses were based on the same conduct. *United States v. Preacely*, 628 F.3d 72 (2nd Cir. 2010) (case remanded for district court to consider this argument); *United States v. Mishoe*, 241 F.3d 214 (2nd Cir. 2001) (case remanded

for district court to consider this argument); *United States v. Gordon*, 2006 US Dist LEXIS 40175 (SDNY 2006); *United States v. Colon*, 2007 WL 4246470 (D. VT 2007); *United States v. Dickmann*, 2007 US Dist. LEXIS 8624 (EDWI 2007); *United States v. Map*, 2007 US Dist. LEXIS 9381 (EDMI 2007) (court reduced criminal history category two levels from V to III); *United States v. Chamulak*, 2006 US Dist. LEXIS 80252 (EDWI 2006); *United States v. Hernandez*, 2005 US Dist. LEXIS 12043 (SDNY 2005); *United States v. Ellis*, 376 F. Supp.2d 1177 (D MN 2004).

In addition, the Court should consider that Mr. Lababneh previously only served a relatively short period of time in prison, and this is disproportionate to the very long sentence he now faces. Several courts have found this factor to be grounds for a variance or downward departure. *United States v. Mishoe*, 241 F.3d 214 (2nd Cir. 2001); *United States v. Hernandez*, 2005 US Dist. LEXIS 12043 (SDNY 2005); *United States v. Colon*, supra; *United States v. Chamulak*, supra.

In *Hernandez*, supra, the court departed downward from 262 months to the mandatory minimum sentence of 120 months because the criminal history category over-represented the seriousness of the criminal history, and because of the disproportionate nature of the prior and current sentences, stating:

> "...Hernandez was assigned ten criminal history points for four convictions... While there is no dispute that Hernandez does, in fact, have four separate convictions, he was sentenced only twice. ... *The state sentencing court did not treat the four separate convictions as warranting four separate punishments. Therefore, assigning criminal history points to each of Hernandez' four convictions... gives this Court pause.*
> ***
> ...[A]ssigning criminal history points in the manner described above *over-represents the severity and magnitude of Hernandez' past criminal conduct. ...*
> ***
> Hernandez was sentenced to a term of one year to three years incarceration on each of the 2000 convictions.... and *he served approximately twenty-four months in total...*

Before the instant offense, Hernandez had never spent more than fifteen months in prison at a stretch. He now faces a mandatory minimum sentence of ten years. The disparity between the sentences imposed and the time served with regard to his earlier convictions and the sentence dictated here.... is significant." *Hernandez*, supra, at 22-24, emphasis supplied.

Therefore, both because the prior offenses were based on the same conduct, and thus counting them twice over-represents the seriousness of Mr. Lababneh's criminal history; and additionally because the amount of time he has previously served is much shorter than the sentence he is now facing, the Court should grant a variance or downward departure to a lower criminal history category.

## IT IS UNCONSTITUTIONAL FOR MARIHUANA - AND XLR-11 - TO BE CONSIDERED SCHEDULE I CONTROLLED SUBSTANCES

In *United States v. Schweder*,  2:11-cr-449, EDCA, the United States District Court for the Eastern District of California held an evidentiary hearing on the question of whether it was unconstitutional for marihuana to continue to be a Schedule I controlled substance. After the hearing, in April, 2015 the Court denied the motion, stating that while the defendants *did* have standing to challenge the placement of marihuana in Schedule I, and while recent developments and research have made said placement more problematic, under rational basis review the Court could not say that said placement was completely irrational. Subsequently, the defendants filed a motion for reconsideration, which is still pending.

 (See also *Hemp Indus. Ass'n v. DEA*, 357 F.3d 1012 (9th Cir. 2004) (the Court found that hemp was improperly placed in Schedule I.)

As discussed further below, prior to the temporary scheduling of XLR-11 in Schedule I on May 16, 2013, the government argued that XLR-11 was an analogue to marihuana, which means they believed that it has a substantially similar chemical structure to marihuana, or a substantially similar effect to that of marihuana. Thus it is reasonable to argue that if it is

unconstitutional to place marihuana in Schedule I, it is likewise unconstitutional to do the same thing with XLR-11.

### THE TEMPORARY SCHEDUILNG OF XLR-11 WAS IMPROPER AND ITS TIMING WAS PROBLEMATIC WITH REGARD TO THIS CASE

On May 16, 2013 the DEA placed XLR-11 on Schedule I as a temporary "emergency" measure. This occurred only days prior to the offense charged herein. Prior to that date, XLR-11 was either completely legal or, according to the government, an analogue controlled substance. Mr. Lababneh was overseas on May 16, 2013, and the charges herein are based only on a telephone call he made to a co-defendant on May 21, 2013.

While temporary scheduling authority was upheld in *Touby v. United States*, 500 US 160 (1991), the Supreme Court stated that this was permissible because it was only for a short period of time (up to 18 months) and that if after that time period the scheduling became permanent, it could be challenged in a criminal case. In addition, the Supreme Court in *Touby* said that *a temporary scheduling order could be challenged as a defense to a criminal prosecution*. The *Touby* Court stated:

> "...From the time when law enforcement officials identify a dangerous new drug, it typically takes *6 to 12 months* to add it to one of the schedules. ...
> ...[T]he [temporary] order remains valid for *one year*. During this 1-year period, the Attorney General presumably will initiate the permanent scheduling process, in which case the temporary scheduling order remains valid for an additional six months.
>     ***
> ...To schedule a drug temporarily, the Attorney General must find that doing so is 'necessary to avoid an imminent hazard to the public safety.' ...
> ...[Additionally] the Attorney General , *if he wishes to temporarily add a drug to schedule I, must find that ...it 'has no accepted medical use...'*...
>     ***
> Petitioners next argue that the temporary scheduling statute is unconstitutional because it bars judicial review. ...
> ....[T]he effect [of temporary scheduling] is merely to postpone legal challenges to a scheduling order for up to 18 months, until the administrative process has run its course. ...*Even before a permanent scheduling order is entered, judicial review is possible under certain circumstances. The United States contends, and we agree, that*

*Section 201(h)(6)* [the temporary scheduling authority] *does not preclude an individual facing criminal charges from brining a challenge to a temporary scheduling order as a defense to prosecution.* ...” *Touby*, supra, at 162-164, 166-168, emphasis supplied.

Since *Touby* was decided, upholding temporary scheduling because of the short time period involved, the temporary scheduling statute was amended to *double* the time period from 12-18 months to 24-36 months. In this case, the two year time period will expire on May 16, 2015 unless the government takes steps to permanently schedule XLR-11 before that date, in which case it can be extended another year. It is submitted that the *Touby* holding is now in question because it was based on a short time period which is now much longer.

It is also submitted that the temporary scheduling of XLR-11 was improper because 1) there was insufficient evidence of an imminent hazard to the public safety; and 2) because it was not shown that XLR-11 (claimed by the government to be substantially similar to marihuana) has no medical use.

In addition, it is submitted that the Court should take into consideration the timing of the temporary scheduling herein, as it occurred only days prior to the instant offense, and while Mr. Lababneh was overseas. The Court should grant a downward variance based on these facts and circumstances.

## THERE SHOULD BE A VARIANCE OR DOWNWARD DEPARTURE BECAUSE THE 167:1 RATIO WITH RESPECT TO SYNTHETIC MARIHUANA VASTLY OVERREPRESENTS THE SERIOUSNESS OF THE OFFENSE

Moreover, the Court should grant a substantial downward variance because, especially given the fact that the government has claimed that XLR-11 is an analogue to marihuana, it is completely unfair and outrageous for this substance to suddenly, days prior to the offense herein, be temporarily placed in Schedule I in such a way that it is treated as 167 times more dangerous/potent than marihuana under USSG 2D1.1, Comment 8(D). If it were *not* found to be

an analogue, XLR-11 would have been *completely legal* until May 16, 2013. If it were found to

be an analogue, then it would have been treated the same as marihuana up to that date. But there

is no rational basis for treating it 167 times harsher than marihuana.

If XLR-11, which is a form of synthetic marihuana, were treated the same as marihuana

under the guidelines, the 99 kilograms Mr. Lababneh pled guilty to possessing would result in a

base level of **22 rather than 32**, and a final offense level of **23 rather than 33**. With a Criminal

History Category of II, the guidelines range would be **51-63** months (instead of 151-188

months), and with a Criminal History Category of III, the range would be 57-71 months, rather

than 168-210 months. It is submitted that, based on all the facts and circumstances discussed

herein, a variance to arrive at the final offense level of 23 is warranted.

## FACTORS UNDER 18 USC 3553(a)

Section 3553(a) directs sentencing courts to consider (1) the nature and circumstances

of the offense and the history and characteristics of the defendant; (2) the need for the

sentence imposed to: (A) reflect the seriousness of the offense, to promote respect for the law,

and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal

conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the

defendant with needed educational or vocational training, medical care, or other correctional

treatment in the most effective manner; (3) the kinds of sentences available; (4) the sentencing

range established by the guidelines; (5) any pertinent policy statements issued by the

Sentencing Commission; (6) the need to avoid unwanted sentencing disparities among

defendants with similar records who have been found guilty of similar conduct; and (7) the

need to provide restitution to any victims of the offense.

Section 3553(a) also requires courts to "impose a sentence sufficient, *but not greater*

*than necessary*, to comply with the purposes set forth in paragraph 2." (Emphasis added).

**Nature and Circumstances of the Offense/ History and Characteristics of the Defendant**

Abdelmaji Lababneh was born in Jordan to Khalaf Al-Lababneh and Fuddah Al-Gharaibeh. He is 48 years old, and both of his parents are deceased. Mr. Lababneh has 11 siblings, and the 9 who are still alive reside in Jordan.

Mr. Lababneh graduated from Kufran High School in Jordan in 1984, and subsequently attended two years of college there, studying to be an electrician. He did not complete this degree, however, as he enlisted in the Jordanian Army, and was honorably discharged after two years. Mr. Lababneh came to the United States in 1989, at the age of 23, on a visa. He was never here illegally, and became a naturalized citizen in 2001.

In 1991, Abdelmaki Lababneh married Ciora Warrens, but this marriage didn't last long and the couple divorced in 1993. In 1995 he remarried, to Ivette Cruz, and they subsequently had three children: Khalaf Lababneh, 21; Roseilah Lababneh, 14; and Hassan Lababneh, 9. While Mr. Lababneh was incarcerated in the late 1990's, his wife began a relationship with someone else, and they subsequently divorced, in approximately 2010. Mr. Lababneh sees his children throughout each summer, and twice during the school year. He also pays child support and his incarceration in this case will not only deprive his children of the opportunity to spend time with him, it will also deprive them of needed financial resources.

Since 2010, Mr. Lababneh has been in a relationship with his fiancée, Cinthia Garcia, and they have lived together for several years. On August 4, 2014, shortly before Mr. Lababneh was released on bond, a son, Zachary Lababneh-Garcia, was born to them. In addition, Mr. Lababneh considers Ms. Garcia's daughter, Shayna, 9, to be his daughter, and they are very close. Ms. Garcia does not work outside the home, and, although her parents (who reside with

9

the couple) pay many of the household expenses, she needs financial support from Mr. Lababneh as well.

Abdelmaji Lababneh suffers from several serious medical conditions, including diabetes, hypertension and high cholesterol. He must take several medications as a result, and is concerned that he will not receive proper medical treatment in prison.

Since his release in August, 2014, Mr. Lababneh has been self-employed selling merchandise (such as paper goods) which he buys wholesale and sells to grocery stores in the Bronx. He also did this from 2010 until his arrest in this case and, previously, from 1999-2005. In addition, from 2003-2006, he was the co-owner of Stop & Go Deli in Peekskill, New York, and he was also a silent partner in a Bronx restaurant in 2013 but ended up losing money in that venture.

As discussed above, Mr. Lababneh's only criminal history involved the sale of untaxed cigarettes in the 1990's. Based on his family circumstances and medical conditions, it is submitted that the Court should grant an additional downward variance from the very harsh guidelines range in this case.

**To Afford Adequate Deterrence to Criminal Conduct.**

Based on all the factors discussed herein, it is submitted that a sentence substantially shorter than the guideline range is more than adequate to deter future criminal conduct.

**To Protect the Public from Further Crimes of the Defendant.**

Because the substance Mr. Lababneh was selling was arguably completely legal until just before he called his co-defendant from overseas; because it is a synthetic version of marihuana, which is becoming legal in many states; because it is likely that both marihuana and XLR-11 will be removed from Schedule I in the foreseeable future; and for all the other

reasons discussed herein, a sentence substantially shorter than the guidelines range is perfectly

adequate to protect the public from Mr. Lababneh.

**To Provide the Defendant with Needed Educational or Vocational Training, Medical Care or other Correctional Treatment in the Most Effective Manner.**

As noted above, Mr. Lababneh suffers from type II Diabetes, hypertension and high

cholesterol, and must take several different prescription medications in order to keep these

conditions under control. It is submitted that the medical care in the Bureau of Prisons is far

inferior to the care provided by doctors on the outside, and it is likely that these conditions will

worsen while Mr. Lababneh is incarcerated.

**The Kinds of Sentences Available.**

There is a wide range of sentences which are available. Based on all the facts and

circumstances discussed above, it is submitted that a sentence within the guidelines range is

much harsher than necessary to meet the 3553(a) goals.

**The Sentencing Range Established by the Guidelines.**

As discussed above, according to the PSR the guidelines range is 168-210 months. As

discussed above, however, if the Court finds a Criminal History Category of II, rather than III,

the range would instead be 151-188 months. In addition, if the Court does not follow the

167:1 ratio and uses the guidelines for marihuana, as discussed above, the range would be **57-63** months (with Criminal History Category II).

**Any Pertinent Policy Statements Issued by the Sentencing Commission.**

This does not appear to be relevant.

**The Need to Avoid Unwanted Sentencing Disparities Among Defendants with Similar Records Who have been Found Guilty of Similar Conduct.**

As discussed above, it is submitted that, especially under the circumstances herein, it

constitutes an extreme and unwarranted disparity to sentence Mr. Lababneh using the 167:1 ratio.

**The Need to Provide Restitution to any Victims of the Offense**.

This factor is not relevant.

## CONCLUSION

Based on the foregoing, it is submitted that this Court should find a criminal history category of II, should treat the XLR-11 herein as if it were marihuana for guidelines purposes, and then should grant a downward variance based the other factors discussed above, and sentence Mr. Lababneh to a minimal period of incarceration.

Dated: May 26, 2015.

Respectfully submitted,

KINDLON SHANKS & ASSOCIATES

By:  *Terence L. Kindlon*
Terence L. Kindlon
Bar Roll No. 103142
*Attorney for Abdelmaji Lababneh*
74 Chapel Street
Albany, New York  12207
Telephone: (518) 434-1493
Fax: (518) 935-9336
E-mail: TKindlon@aol.com

cc:    AUSA Jeffrey C. Coleman