UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

```
_____
Abdelmaji Lababneh,            )
                Petitioner     )
                               )
v.                             )        Crim. No. 14-cr-189-001
                               )
United States of America,      )
                Respondent.    )
_____)
```

**PETITIONER ABDELMAJI LABABNEH'S MOTION TO
REDUCE TERM OF IMPRISONMENT PURSUANT TO 18 U.S.C. §3582(c)**

NOW COMES Petitioner Abdelmaji Lababneh, *pro se*, (hereinafter Petitioner, "I" "me" "Mr. Lababneh"), to hereby move this Honorable Court to reduce his term of imprisonment based on 18 U.S.C. §3582(c)(2) and the Sentencing Guidelines clarifying Amendment 794, effective November 1, 2015.

### I.     PRELIMINARY STATEMENT

In her recent decision in *United States v. Perez*, No. 08-cr-00429-06(DLC) (S.D.N.Y. Sept. 14, 2016), the Honorable Judge Denise Cote determined that Amendment 794 was a clarifying amendment and therefore was to be retroactively applied and that the question of retroactivity of Amendment 794 was a matter of first impression for the Second Circuit. The Ninth Circuit has already held that Amendment 794 was to be retroactively applied on direct review because it was a clarification of the Sentencing Guidelines. See *United States v. Quintero-Leyva*, 823 F.3d 519 (9th Cir. 2016). The reason that Judge Cote's analysis in *Perez* is critical in my case is because the commentary under §3B1.2 had provided that a mitigating role adjustment is available to any defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant". Amendment 794 inserted after the

1

phrase "substantially less culpable than the average participant...." the words "in the criminal activity." USSG §3B1.2.

Amendment 794 also introduced a list of several non-exhaustive factors that a sentencing court should consider in determining whether to apply a "mitigating role adjustment" in determining the defendant's sentence. Amendment 794 went on to add that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." *Id.* n.3 in Commentary.

After Amendment 794, Section 3B1.2 requires the Court to consider at least the following five factors in determining whether a defendant qualifies for a minor role reduction:

(1) The degree to which the defendant understood the scope and structure of the criminal activity;

(2) The degree to which the defendant participated in planning or organizing the criminal activity;

(3) The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(4) The nature and extent of the defendant's participation in the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

(5) The degree to which the defendant stood to benefit from the criminal activity. See *Quintero-Leyva*, 823 F.3d at 523, and USSG §3B1.2(b). These factors are non-exhaustive and a district court may also consider other factors when determining to apply the reduction. *Id.* at 523.

## II.  LEGAL STANDARD

In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. §994(p) and upon motion of the defendant, or on its own motion, the Court may reduce the term of imprisonment of the defendant after considering the factors set forth in

§3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. See 18 U.S.C. §3582(c)(2). As the Second Circuit has made clear in several cases: "a defendant sentenced under one version may be given the benefit of a later revision if the revision represents not a substantive but merely a clarification of the United States Sentencing Commissions' prior intent." See, e.g., *United States v. Sabbeth*, 277 F.3d 94, 96 (2d Cir. 2002).

Based on the new clarifying Amendment 794, the Court should then consider the factors enumerated in 18 U.S.C. §3553a to reduce the original sentence previously imposed. Section 3582 (a) mandates that the Sentencing Court "shall" consider the factors set forth in 18 U.S.C. §3553(a) to the extent they are applicable, *"recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation."* As Attorney General Eric Holder expressed the goals of sentencing in his May 19, 2010 Memorandum to all Department of Justice prosecutors:

> "Prosecutors should seek sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public, and offer defendants an opportunity for effective rehabilitation."

### III.   WHY MY 3582 MOTION SHOULD BE GRANTED

This is a tragic and ridiculous situation that came from an associate of mine, not even a good friend, selling synthetic marijuana to a government informant two days after the government made synthetic marijuana a Class I drug. This case cries out for a non-Guidelines sentence due to the Rule of Lenity. See, e.g., *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005): "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *quoting United States v. Harriss*, 347 U.S. 612, 617 (1954). See, also, the Second Circuit's recent decision in *United*

3

*States v. Algahaim*, No. 15-2024 (2d Cir. 2016), where the case was remanded back to the district court to explore a below-Guidelines sentence due to the fact that the sentences of 21 and 30 months were so high because of the amount of loss in the case rather than just the six levels for the offense itself.

Also, Your Honor should examine the sentence of probation in *United States v. Nunez*, No. 12-cr-778-2 (S.D.N.Y. 2015), involving large amounts of synthetic marijuana, many times larger than the amounts at issue here. The whole purpose of the Sentencing Guidelines is to avoid the disparity in sentences. Obviously, Your Honor knows very well the only reason Abdel's attorney told him to plead guilty is because the attorney thought that Abdel was in Jordan when the government put synthetic marijuana on the Class I list, and the transaction occurred two days before the change in status. See Chief Justice Roberts' test for what is an illegal drug in *McFadden v. United States*, 135 S. Ct. 2298, 2310-11 (2015):

> "a defendant needs to know more than the identity of the substance; he needs to know that the substance is *controlled*. See, *e.g.*, *United States* v. *Howard*, 773 F. 3d 519, 526 (CA4 2014); *United States* v. *Washington*, 596 F. 3d 926, 944 (CA8 2010); *United States* v. *Rogers*, 387 F. 3d 925, 935 (CA7 2004).
> In cases involving well-known drugs such as heroin, a defendant's knowledge of the identity of the substance can be compelling evidence that he knows the substance is controlled. See *United States* v. *Turcotte*, 405 F. 3d 515, 525 (CA7 2005). But that is not necessarily true for lesser known drugs. A pop quiz for any reader who doubts the point: Two drugs—dextromethorphan and hydrocodone— are both used as cough suppressants. They are also both used as recreational drugs. Which one is a controlled substance? But when "there is a legal element in the definition of the offense," a person's lack of knowledge regarding that legal element *can* be a defense. . *Liparota* v. *United States*, 471 U. S. 419, 425 (1985). And here, there is arguably a legal element in Section 841(a)(1)— that the substance be "controlled."
> The analogy the Court drew in *Liparota* was to a charge of receipt of stolen property: It is no defense that the defendant did not know such receipt was illegal, but it is a defense that he did not know the property was stolen. Here, the argument goes, it is no defense that a defendant did not know it was illegal to possess a controlled substance, but it is a defense that he did not know the substance was controlled."

Abdel had no idea that synthetic marijuana had been made a Schedule I "controlled substance" while he was in Jordan, and he did not participate in the actual transaction itself, so clearly he did not have the knowledge that the synthetic marijuana product that he was involved with was now a banned substance, as was required in *McFadden*, that the defendant have knowledge that he is not only "knowingly" dealing with a "controlled substance" but he is also "knowingly" breaking the law by selling it. Once again, it appears that both the alleged sale of the synthetic marijuana and it being added to the "controlled substance" list happened within days of each other while Abdel was visiting his family in Jordan.

Moreover, if Abdel did not have the knowledge that he was breaking the law, then he could not possess the criminal intent as required by *Morissette v. United States*, 342 U.S. 246, 250 (1952), where the Supreme Court stated that "wrongdoing must be conscious to be criminal" and that this principle of criminal justice in America is "as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil". See, also, *Pettibone v. United States*, 148 U.S. 197, 206-7 (1893), where the defendants were charged with encouraging mine workers to disobey an injunction, and the Supreme Court, in reversing their conviction, stated:

> It seems clear that an indictment against a person…must charge a knowledge or notice, on the part of the accused….Unless that fact exists, the statutory offense cannot be committed…and without such knowledge or notice, the evil intent is lacking.

Clearly, Abdel lacked the knowledge that he was breaking the law, as well as the criminal *mens rea* that was necessary under American jurisprudence to amount to a crime.

The associate who actually sold the synthetic marijuana received only 33 months, while Abdel received 97 months. Your Honor looked at the old Sentencing Guidelines which still use the old ratio of 1:167, meaning one gram of synthetic marijuana is the equivalent of 167 grams of

regular marijuana. Therefore, as bizarre as this might seem, the penalty for selling "synthetic" marijuana based on the amount is 167 times greater than the penalty for selling real marijuana, which makes that person a real drug kingpin. "The application of the 1:167 conversion ratio will likely continue to produce inconsistent and inequitable results at sentencing by relying on downward deviations to correct an unsound and unproven calculation. Defendants sentenced under this ratio can receive vastly disparate sentences that depend almost entirely on a trial judge's willingness to deviate from the guidelines-recommended range." See, e.g., Sentencing TR. at 13:4-12, *United States v. Mansour*, No. 5:13-cr-00429 (N.D.N.Y. Jan. 11, 2016), ECF. No. 252 (imposing a one year, one day sentence despite application of the ratio resulting in a guidelines range of 46-57 months); *United States v. Hossain*, (1:15-cr-14034) 2016 WL 70583 at *5-6 (applying a 1:7 ratio, given that "there does not seem to be any reason behind the 1:167 ratio"). Another Muslim inmate just left Canaan after finishing his sentence of a year and one day, for the same situation as me, in the same state and in the same Second Circuit, but with a different judge and different lawyer.

To date, only one court has critically examined in context of all of the statutory sentencing factors, whether the 1:167 ratio rests upon appropriate empirical foundations. See *United States v. Hossain*, (1:15-cr-14034) 2016 WL 70583, at *5-7. In *Hossain*, the court thoroughly analyzed the sentencing factors and concluded that, "despite the potential dangers of synthetic cannabinoids, and the clear need for deterrence," *id.* at *5, "the goals of sentencing are not achieved by imposing sentences to upwards of thirty years in prison for dealing in a substance that was intended to mimic marijuana and so new that only a few years before...it was being sold in gas stations and convenience stores," *id.* at *7. Accordingly, the *Hossain* court deviated downward from the guidelines-recommended range based in large part on "the newness

of the regulation of XLR-11,...the intimacy of our understanding of the effects of XLR-11 and other synthetic cannabinoids," *id.* at *6, and the fact that the ratio appears to lack a sound basis. The judge in *Hossain* went on to say:

> "In considering the THC to marijuana ration, I find it troubling that there does not seem to be any reason behind the 1:167 ratio. Although I asked each of the experts at the hearing, no one could provide me with a reason for this ratio, which has major implications in determining the base level offense. After my own research and a phone call to the Sentencing Commission, I still could find no basis for this ratio. It appears to have been included in the first set of Guidelines in 1987, with no published explanation. While a sentence must reflect the seriousness of the offense to provide just punishment, a sentence based on a range that seems to have no cognizable basis is not just".

Although district courts are not required to analyze whether a sentencing guideline is supported by empirical evidence, they are charged with imposing sentences that are "sufficient but not greater than necessary" to achieve the goals of sentencing articulated in 18 U.S.C. §3553(a). This obligation calls for greater scrutiny of unjustified effects of the 1:167 conversion ratio in sentencing synthetic marijuana offenders. The XLR-11 synthetic marijuana discussed above is the same synthetic marijuana discussed in *Hossain* and is the same compound that Mansour received a year and a day on and is the same cannabinoid still being sold at convenience stores in the Bronx under a dozen different names such as Scooby Doo, Smiley Face, Bob Marley, and hundreds of others and is even available on Alibaba and other internet websites.

The inequity of the 1:167 ratio may be further exacerbated because defendants confronting it may experience overwhelming pressure to plead guilty, especially when prosecutors are willing to stipulate to sentencing factors that would lower the sentencing range under the Guidelines. See *Human Rights Watch*, "An Offer You Can't Refuse: How US Federal Prosecutors Force Drug Defendants to Plead Guilty" (Dec. 2013) (observing that prosecutors may negotiate terms that would lead to lowering sentencing, while district courts imposed, on

7

average, three times longer sentences when defendants go to trial). Your Honor will notice that the judges in the *Hossain* and *Mansour* cases were both very critical of the arbitrary and unscientific 1:167 ratio for synthetic marijuana versus the real thing in their opinions. Therefore, I would respectfully ask that you commute my sentence to one year and one day as was done in the *Mansour* case, which is still a serious sentence for a product that is still being sold in convenience stores around the country. Once again please see *Nunez*, where probation was given to the defendant who knowingly sold tons of synthetic marijuana in Manhattan.

Moreover, I am definitely entitled to a mitigating role downward reduction under Amendment 794 for having such a small role, if any, in the conspiracy. See *United States v. Cruickshank*, 2016 US App. LEXIS 17169 (11th Cir. Sept. 20, 2016). Several friends here helping me with this motion feel that because my role in the conspiracy, if any, was so small that it would be well within Your Honor's discretion to give me an Amended Judgment and Commitment Order of time served. Beyond a doubt, I have learned my lesson. But, should Your Honor decide not to grant this *pro se* motion, I would respectfully ask that Your Honor appoint CJA counsel for me, as several attorneys have approached my family that have helped other defendants in synthetic marijuana cases. As Your Honor knows, because of the explosion and fire, my family has been living in a homeless shelter and I have no money to pay for an attorney.

## CONCLUSION

For the above reasons, and in light of the clarifying Amendment 794 to the Sentencing Guidelines, I respectfully ask this Court to modify my sentence pursuant to Section 3582(c) and to hereby reduce my sentence to time served.

Respectfully Submitted,

/s/ Abdelmaji Lababneh
Petitioner *Pro Se*

Incarcerated Inmate
Abdelmaji Lababneh
Reg. No. 58275-054
FPC Canaan
P.O. Box 200
Waymart, PA 18472

Joseph Castagno
10 Tower Lane
Suite 100
Avon, CT 06001

Honorable Mae A. D'Agostino
U.S. District Judge
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207


