AO 243 (Rev. 01/15)                                                                                                      Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | Northern New York | |
|---|---|---|---|
| Name *(under which you were convicted)*:<br>Abdelmajid K. Lababneh | | | Docket or Case No.:<br>1:14-cr-00189-MAD |
| Place of Confinement: | | Prisoner No.:<br>58275-054 | |
| UNITED STATES OF AMERICA | v. | Movant *(include name under which convicted)*<br>Lababneh | |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   US District Court Northern District of New York
   James T. Foley Courthouse Suite 509
   445 Broadway, Albany, NY 12207

   (b) Criminal docket or case number (if you know):  1:14-cr-00189-MAD

2. (a) Date of the judgment of conviction (if you know):  6/16/2015

   (b) Date of sentencing:  6/16/2015

3. Length of sentence:  97 Months

4. Nature of crime (all counts):

   Pled guilty to 1 count of distributing synthetic marijuana.

5. (a) What was your plea?  (Check one)

   (1) Not guilty ☐          (2) Guilty ☑          (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have?  (Check one)        Jury ☐        Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?        Yes ☐        No ☐

8. Did you appeal from the judgment of conviction?        Yes ☑        No ☐

AO 243 (Rev. 01/15)                                                                                                          Page 3

9.   If you did appeal, answer the following:

(a) Name of court:  USCA for the Second Circuit _____

(b) Docket or case number (if you know): _____

(c) Result:  Judgment Affirmed _____

(d) Date of result (if you know): _____

(e) Citation to the case (if you know): _____

(f) Grounds raised:




(g) Did you file a petition for certiorari in the United States Supreme Court?     Yes [ ]     No [✓]

If "Yes," answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

(5) Grounds raised:




10.   Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

Yes [✓]     No [ ]

11.   If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:    District Court _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4)   Nature of the proceeding:   Motion Pursuant to 3582 _____

(5)   Grounds raised:   Reduction of Sentence _____

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☑

(7)  Result:  Motion Denied

(8)  Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

(1)  Name of court: _____

(2)  Docket of case number (if you know): _____

(3)  Date of filing (if you know): _____

(4)  Nature of the proceeding: _____

(5)  Grounds raised:

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☐

(7)  Result: _____

(8)  Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)  First petition:        Yes ☐        No ☐

(2)  Second petition:      Yes ☐        No ☐

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12.  For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

AO 243 (Rev. 01/15)                                                                                                    Page 5

**GROUND ONE:**   Ineffective Assistance of Counsel

---

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Please see attached Memorandum of Law.

---

(b)  **Direct Appeal of Ground One:**

    (1)   If you appealed from the judgment of conviction, did you raise this issue?

       Yes ☐     No ☑

    (2)   If you did not raise this issue in your direct appeal, explain why:

    Must be raised in 2255 Petition

---

(c)  **Post-Conviction Proceedings:**

    (1)   Did you raise this issue in any post-conviction motion, petition, or application?

       Yes ☐     No ☑

    (2)   If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

---

    (3)   Did you receive a hearing on your motion, petition, or application?

       Yes ☐     No ☐

    (4)   Did you appeal from the denial of your motion, petition, or application?

       Yes ☐     No ☐

    (5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

       Yes ☐     No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND TWO:**  My Guilty Plea Was Not Knowingly, Intelligently, or Voluntarily Given
_____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Please see attached Memorandum of Law.

_____

(b)  **Direct Appeal of Ground Two:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☑

(2)  If you did not raise this issue in your direct appeal, explain why:

Must be raised in 2255 Petition
_____

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☑

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐      No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐      No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐      No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**     I did not receive Constitutional Fair Warning or Fair Notice.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Please see attached Memorandum of Law.

(b) **Direct Appeal of Ground Three:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐    No ☑

    (2)  If you did not raise this issue in your direct appeal, explain why:

    Properly raised in a 2255 Petition

(c) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐    No ☑

    (2)  If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed:

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

    _____

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐    No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐    No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐    No ☐

    (6)  If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

    _____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**   There was no mens rea - criminal intent in this case.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Please see attached Memorandum of Law.

(b)  **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☑

(2)   If you did not raise this issue in your direct appeal, explain why:

Porperly raised in a 2255 Petition

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☑

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐       No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐       No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐       No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

13.  Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

There are several constitutional grounds that could not be raised because of my unconstitutional Plea Agreement that was the product of Ineffective Counsel.

14.  Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?       Yes ☐       No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a)  At the preliminary hearing:

_____

(b)  At the arraignment and plea:
Court Appointed

_____

(c)  At the trial:

_____

(d)  At sentencing:

_____

(e)  On appeal:
Court Appointed

_____

(f)  In any post-conviction proceeding:

_____

(g)  On appeal from any ruling against you in a post-conviction proceeding:

_____

16.  Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?          Yes ☐          No ☑

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes ☐          No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

(b)  Give the date the other sentence was imposed:  _____

(c)  Give the length of the other sentence:  _____

(d)  Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?          Yes ☐          No ☐

18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

This petition is timely filed based on Supreme Court decisions directly applicable to my case.

Page 14

Therefore, movant asks that the Court grant the following relief:

*Please vacate my conviction or reduce my sentence to time served,*

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on
_____ (month, date, year).

Executed (signed) on _*June 5th 2017*_ (date).

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABDELMAJID LABABNEH ) <br> Petitioner, ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA ) <br> Respondent ) | CRIMINAL NO. 1:14-cr-00189-MAD <br><br> CIV NO. _____ |

## MOTION TO VACATE CONVICTION AND REDUCE SENTENCE

### PRELIMINARY STATEMENT

I, Abdelmajid Lababneh (hereinafter "Petitioner", Abdelmaji, Abdel, "I" or "me"), do hereby submit this memorandum in support of my Petition pursuant to 28 U.S.C. § 2255.

Abdelmajid Lababneh is a Muslim, born in Jordan, who speaks broken English with a heavy Arab accent. He does not read or write English well enough to properly defend himself and respectfully asks that this Honorable Court appoint special CJA Counsel for him to argue these essential constitutional violations before the Court. Please see the Court's order denying counsel to Abdel for this 2255 Petition attached as Exhibit One. It is important that the Court realize that all of the inmates and friends outside helping Abdel put this 2255 Petition together are Catholics and Christians who believe in Abdel's innocence. We respectfully ask the Court to reduce Abdel's sentence to time served because he did not knowingly commit any crime and did not knowingly plead guilty. This is certainly the right thing to do considering the Supreme Court's decision last week in *Lee v. United States,* 16-327 (June 23, 2017) where the Supreme Court reversed the conviction of an American citizen born in South Korea who pled guilty to

-1-

distributing ecstasy and accepted a sentence of a year and a day because his attorney told him that he would not be deported. The Supreme Court by a 6-2 vote concluded that the attorney's error in assuring his client that he would not be deported constituted both substandard performance and prejudice satisfying both prongs of *Strickland v. Washington,* 466 U.S. 668 (1984).

In this case, had Abdel been told that he could go home to his family after six months or a year, but then would be deported back to his homeland in Jordan, he would have gladly taken that deal. However, had he known that he would receive a sentence of eight years and not see his wife or young children for eight years for a crime that he did not knowingly commit, he would clearly have taken his chances and gone to trial. In *Lee,* the defendant was told "not to worry" about being deported and received a relatively light sentence of a year and a day for distributing a drug everyone knows is illegal. In Abdel's case, he was being detained awaiting trial and was told by his attorney to "take the deal and you go home today" and "not to worry" you will get no more than probation or six months to a year because synthetic marijuana was added to the list while Abdel was in Jordan. In retrospect, Abdel wishes he had Lee's attorney because he would have already served his full sentence and be at home with his family that desperately needed him.

It is beyond peradventure that Abdel's attorney lied to him, failed to negotiate a decent plea agreement as is also guaranteed by the Sixth Amendment, and then gave Abdel the terrible advice to take the deal. The attorney in *Lee* negotiated a very good deal for someone caught red-handed distributing a known "controlled substance" whereas in Abdel's case, his attorney told him to sign a plea agreement that allowed the Court to sentence him to 20 years for someone else selling a substance that was not on the Controlled Substance List when Abdel left the country in

-2-

April, but was only added to the list after Abdel's associate (and not Abdel) did the transaction sometime in May. See the Complaint attached as Exhibit Two which is not even clear on which day in May the alleged transaction occurred, but whenever it happened in May, Abdel was not in the country and had no knowledge that XLR-11 was a "controlled" substance.

Moreover, not only did Abdel's attorney fail to negotiate a "good" plea bargain or even a binding one under Rule 11(c)(1)(C), he had his client sign a bad deal and he told his client to take the deal leading Abdel to believe that he would get a light sentence of probation, time served, or a few months. In *Lee*, the sentence at issue was a year and a day for a known illegal drug. In the Supreme Court's decision in *Carachuri–Rosendo v. Holder*, the sentence at issue for another known drug, Xanax, was only 10 days but that was the second offense for Rosendo who already served 20 days for marijuana. See *Carachuri–Rosendo v. Holder*, 130 S. Ct. 2577 (2010). It is clearly malpractice as well as Ineffective Assistance of Counsel that Abdel's attorney failed to negotiate a decent plea bargain, then cajoled him to take the deal, and then lied to him about the possible jail time that he would receive. *Carachuri–Rosendo* received a sentence of 20 days for real marijuana and 10 days for real Xanax, *Lee* received a year and a day for real ecstasy, and Abdel received eight years (97 Months) for fake marijuana that no one knew was on the Controlled Substance List – and this Court should give Abdel a chance to plead anew and challenge synthetic marijuana as being on the Controlled Substance List at all. As it stands, Abdel's conviction was unconstitutional and his sentence was grossly unreasonable, even if it was within the terms of the plea agreement.

In *Lee*, the Supreme Court stated that "The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea. See *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). To demonstrate that counsel

-3-

was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result. *Strickland*, at 692." It is clear that Abdel's case is far stronger for a claim of Ineffective Assistance of Counsel than it was for the defendant in *Lee*. See also e.g. the Second Circuit's decision in *Kovacs v. United States,* 744 F 3d 44, 50 (2d Cir. 2014). Therefore, if for no other reason, this Court should grant Abdel's 2255 Petition, vacate his conviction or reduce his sentence to time served, and send him home to his family.

Abdel pled guilty to selling synthetic marijuana only because his attorney told him if he pled guilty, he could go home immediately, and that he would not get a lot of jail time. He was told he would get time served, probation as others had received, or six months or less because synthetic marijuana is still for sale in gas stations and convenience stores all over the Bronx, where Abdel lived before he came to FPC Canaan. Abdel had no idea that synthetic marijuana was on the Controlled Substance List, because he was traveling through Jordan visiting family when it was put on the list by DEA Agents in Chicago on a "temporary" basis in May of 2013. In fact, prior to his departure to Jordan, synthetic marijuana was <u>NOT</u> on the Controlled Substance List and many of Abdel's friends were selling it at their convenience stores in the Bronx. Upon his return, he was shocked to find out, by his arrest, that his alleged crime involved an associate of his selling synthetic marijuana to an informant that was working with the government in Troy, New York. Abdel had never been to Troy and he had no idea that this transaction had even occurred while he was out of the country, let alone that synthetic marijuana has been temporarily added to the Controlled Substance List on May 16, 2013 by DEA Agents in Chicago and was therefore now deemed to be illegal. Abdel left for Jordan in April 2013, the transaction allegedly occurred sometime between May 17-23, 2013 according to the Indictment,

-4-

attached as Exhibit Three, while he was out of the country, and he had no idea what his associate was doing until he was arrested in January of 2014. Abdel had absolutely no knowledge of the transaction or what his associate had done; he certainly was not involved in any conspiracy to sell a "controlled substance" that he thought was totally legitimate at the time; he had no knowledge that he or his associate were committing any crime, and he certainly did not agree to participate in any conspiracy to violate the law. Please see Chief Justice Roberts' quiz in *McFadden v. United States,* 135 S. Ct. 2298 (2015), where the Supreme Court ruled that someone has to have knowledge that a substance is actually a "controlled substance" before he can be convicted of the crime of distributing a "controlled" substance. Abdel was sentenced to 97 months because someone he knew sold a substance that no one knew was recently put on the Controlled Substance List on a temporary basis and that was still available and being sold in convenience stores and gas stations in Albany, as well as in the Bronx, and everywhere else throughout the country. The only reason that Abdel pled guilty is because his constitutionally ineffective attorney promised him that he could go home immediately and that he would only get 5 or 6 months, despite the fact that his plea agreement, which Abdel could not even read, said up to 20 years and a fine of up to $1,000,000.

Abdel has a wife and two young children who managed to escape from a terrible explosion and fire in the house that they had lived in the Bronx. Abdel's wife and children lost everything and are now living in a shelter in the Bronx with no one to help them. This tragic and ridiculous situation came from as associate selling synthetic marijuana, which tax payers should not be bearing the exposure of having Abdel kept from his family in their time of need. The associate who actually sold the synthetic marijuana received only 33 months. If for that reason

-5-

alone, Your Honor should grant Abdel's 2255 Petition and reduce Abdel's sentence to 33 months, if not time served.

If selling synthetic marijuana was a crime, then Abdel was willing to cooperate with the authorities and point out hundreds of stores in the Bronx that sold it and are still selling it to this day. Unfortunately, his indictment was in Troy, New York, a place that he had never been to before, and the authorities in Albany could not care less about the stores in the Bronx selling anything. Poor Abdel received no help from his ineffective counsel, did not receive a downward departure for cooperating with the government, and did not even receive a two point reduction for drug crimes under Amendment 782 of the Sentencing Guidelines, because the Guidelines still use the original ratio of 1:167, meaning one gram of synthetic marijuana is the equivalent of 167 grams of regular marijuana. Therefore, as bizarre as this might seem, the penalty for selling "synthetic" marijuana based on the amount is 167 times greater than the penalty for selling real marijuana, which makes that person a real drug kingpin. So, all of those convenience store owners in the Bronx are just miniature Pablo Escobar's from the perspective of the Sentencing Guidelines because of this unjust and unreasonable discrepancy between "synthetic" marijuana and real marijuana. Abdel's sentence is made even more unreasonable and unconstitutional by the fact that many states allow for medical marijuana and even recreational marijuana. Abdel should be allowed to test the constitutionality of DEA Agents adding synthetic marijuana to the "Controlled Substance" List rather than Congress delineating what is a crime and what is not a crime. Eight years for distributing something that was not on the "List" in April of 2013 is clearly an unconstitutional judgment and an unreasonable sentence.

## I.   MY GUILTY PLEA WAS NOT KNOWINGLY, INTELLIGENTLY, OR VOLUNTARILY GIVEN

The Supreme Court has ruled that even a guilty plea can be challenged in a 2255 Petition:

> "It has long been established that if a defendant's plea is not entered knowingly and voluntarily, it has been procured in violation of the Due Process Clause and therefore a conviction based there on is invalid." *McCarthy v. United States*, 394 U.S. 459, 466 (1969)

In my case, my guilty plea was not knowingly, intelligently or voluntarily given because I received not just bad advice, but absolutely false advice from my attorney. See *Padilla v. Kentucky*, 130 U.S. 1473, 1480-81 (2010) and *McMann v. Richardson*, 397 U.S. 739, 771-72 (1970). The Supreme Court has also said that: "A guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice." See *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). This is especially true if the guilty plea was not intelligently or voluntarily given based on the bad advice of counsel, see e.g. *Tollett v. Henderson*, 411 U.S. 258 (1973), where, just as in my case, my attorney did not advise me of all of the ramifications of taking a guilty plea, but instead told me to plead guilty so that I could immediately go home to my wife and family and at most I would receive six months to a year of jail time for allegedly conspiring to sell synthetic marijuana, which I thought was legal at the time.

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of counsel." *Padilla* at 1480-81, quoting *McMann* at 771. In *Padilla*, his attorney failed to tell him about the negative ramifications that his guilty plea would have on his immigration status. I certainly did not receive effective or competent advice from my attorney, who led me to believe that if I pled guilty that I would go home with time served and that all of my constitutional arguments would still remain viable on appeal. The Supreme Court has made it clear that defendants are entitled to "effective" counsel even during the "plea-bargaining" stage of

-7-

changing a plea. See *Missouri v. Frye,* 132 S. Ct. 1399 (2012) and *Lafler v. Cooper,* 132 S. Ct. 1376 (2012). There is no way I would have signed a plea agreement allowing a fine of $1,000,000 or 20 years in prison. Had I known that I would get more than six months, I never would have agreed to plead guilty. My attorney should have told me about an 11(c)(1)(C) agreement as well. My attorney did not even advise me of my rights or explain the plea agreement to me. At no time did he advise me that there were different types of plea agreements and that an 11(c)(1)(C) plea agreement would be binding on the Court as well as the government.

No rational human being would plead guilty and sacrifice valuable constitutional rights to receive a sentence of up to 20 years when the maximum sentence under the law for a conspiracy to distribute real marijuana is 60 months; especially considering that medical marijuana is legal in many states now, including New York. Therefore, because my guilty plea was not knowingly, intelligently and voluntarily given, and I did not receive "Effective Assistance to Counsel", my conviction and sentence should be vacated and my 2255 Petition should be granted.

## II.    I AM THE VICTIM OF PER SE INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court in *Maples v. Thomas,* 565 U.S. 132 (2012), stated that when a defendant is effectively abandoned by his attorney at a critical juncture of the criminal process that is Ineffective Assistance of Counsel *per se* and a clear violation of the Effective Assistance of Counsel Clause of the Sixth Amendment of the Constitution. It also satisfied both prongs of *Strickland v. Washington,* 466 U.S. 688 (1984) because "prejudice" and "substandard performance" are both presumed when the accused is abandoned and given false advice and lies as was done in my case. See e.g. *Glasser v. United States*, 315 U.S. 60, 72 (1942) and *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978). This is, in fact the holding of *Jamison v. Lockhart,* 975 F.

2d 1377 (8th Cir. 1992) citing both *Strickland* at 694 and *Cuyler* at 347. Therefore, because I clearly satisfy both prongs of *Strickland* - "substandard performance" and "prejudice" (because I was incarcerated), I am entitled to a ruling by this Court that it was Ineffective Assistance of Counsel *per se* and my 2255 Petition should be granted.

My guilty plea was not knowingly, intelligently or voluntarily given, and based on the virtually unanimous decision in *McCarthy*, this Court should vacate my guilty plea and my conviction based on my attorney giving me not just bad advice but clearly false information. Because my attorney lied to me and deceived me, I now only need to show deficient performance to make my claim to vacate my conviction because, again, under these circumstances the Supreme Court has said that "prejudice" in such a case is presumed. See, e.g., *Glasser*, 315 U.S. at 72, and *Holloway*, 435 U.S. at 484. See, also, *Chapman v. California*, 386 U.S. 18, 23 (1967) that "claims of ineffectiveness assistance of counsel" are never to be treated as harmless error.

In the landmark case of *Maples*, where a death-row inmate in Alabama was granted a Certificate of Appealability for a second chance habeas petition because he was callously abandoned by his attorneys, the Supreme Court focused its opinion on several cases including the Eighth Circuit's decision in *Jamison*. The "ineffective counsel" in *Jamison* was merely criticized by the Eighth Circuit for not challenging Jamison's confession and investigating the true facts of the case. In the present case, I only pled guilty because I thought I would get time served and go home after being away from my family, in a distant and unfriendly forum, for almost a year of incarceration. This is a clear violation of my constitutional rights under *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012). My attorney should have done a better job in structuring a guaranteed plea under Rule 11(c)(1)(C).

The law is clear, a guilty plea is not valid if it is not intelligently, knowledgably or voluntarily given because I did not understand the rights I was waiving or the negative consequences of my guilty plea. See, e.g., *Padilla* at 1481-83, *Tollett*, and *McCarthy* at 462-464, and *Cuyler* at 344.   Whereas most of the invalid "guilty plea" cases are also "ineffective assistance of counsel" cases, there is a rare subset where these two groups of unconstitutional conduct overlay each other, and that where the client is abandoned by his attorney at a critical juncture of the criminal process.

In reversing the denial of the defendant's request in *Jamison* for a writ of habeas corpus; the Eighth Circuit referred to the now famous two-prong test of *Strickland* for measuring claims of ineffective assistance of counsel, the first prong being substandard performance and the second prong being prejudice to the defendant. See *Strickland*, 466 U.S. at 692, citing *Cuyler*. This is very significant that the Supreme Court in *Maples* cites to the Eighth Circuit in *Jamison*, where the Eighth Circuit cites to *Strickland*, where the Supreme Court cites to *Cuyler* for the additional proposition that:

> "Counsel, however, can also deprive a defendant of the right to effective assistance simply by failing to render adequate legal assistance where a conflict of interest adversely affecting the lawyer's performance renders assistance ineffective." See *Strickland* at 694, citing *Cuyler* at 344 (internal citations omitted).

Additionally, any amount of prison time constitutes "prejudice" for the purposes of the *Strickland* Doctrine, as well as under the Sixth Amendment.  See *Glover v. United States*, 531 U.S. 198 (2001).

Therefore, because my counsel abandoned me at critical junctures of my defense and not only gave me bad advice but also lied to me, and did not secure even a reasonable plea agreement as required by the Supreme Court's decisions in *Frye v. Missouri* and *Lafler v.*

*Cooper,* and most recently as of last week in *Lee v. United States,* this Court should grant my 2255 Petition, vacate my conviction, and order my immediate release from prison.

## III.     THERE WAS NO MENS REA – CRIMINAL INTENT IN THIS CASE

This tragic and ridiculous situation came from an associate of mine, not even a good friend, selling synthetic marijuana to a government informant two days before the government made synthetic marijuana a Class I drug on a temporary basis. This case cries out for a non-Guidelines sentence due to the Rule of Lenity and my 2255 Petition should be granted. See, e.g. *Arthur Andersen LLP v. United States,* 544 U.S. 696, 703 (2005): "the underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." Quoting *United States v. Harriss,* 347 U.S. 612, 617 (1954). See e.g. Chief Justice Roberts' test for the knowledge *mens rea* requirement of what must be known before someone is "guilty" of selling an "illegal" drug in *McFadden v. United States,* 135 S. Ct. 2298, 2310-11 (2015):

> "a defendant needs to know more than the identity of a substance; he needs to know that the substance is *controlled.* See, *e.g., United States v. Howard,* 773 F. 3d 519, 526 (CA4 2014); *United States v. Washington,* 596 F. 3d 926, 944 (CA8 2010); *United States v. Rogers,* 387 F. 3d 925, 935 (CA7 2004).
> In cases involving well-known drugs such as heroin, a defendant's knowledge of the identity of the substance can be compelling evidence that he knows the substance is controlled. See *United States v. Turcotte,* 405 F. 3d 515, 525 (CA7 2005). But that is not necessarily true for lesser known drugs. A pop quiz for any reader who doubts the point: Two drugs – dextromethorphan and hydrocodone – are both used as cough suppressants. They are also both used as recreational drugs. Which one is a controlled substance? But when "there is a legal element in the definition of the offense," a person's lack of knowledge regarding that legal element *can* be a defense. *Liparota v. United States,* 471 U.S. 419, 425 (1985). And here, there is arguably a legal element in Section 841(a)(1) – that the substance be "controlled."
> The analogy the Court drew in *Liparota* was to a charge of receipt of stolen property: It is no defense that the defendant did not know such receipt was illegal, but it is a defense that he did not know the property was stolen. Here, the argument goes, it is no defense that a defendant did not know it was illegal to possess a controlled substance, but it is a defense that he did not know the substance was controlled."

Abdel had no idea that synthetic marijuana had been temporarily made a Schedule I "controlled substance" while he was travelling in Jordan, and he did not participate in the actual transaction itself, so clearly he did not have the knowledge that the synthetic marijuana product that he was allegedly involved with was just put on a banned substance list, as is required by *McFadden,* that the defendant have knowledge that he is not only "knowingly" dealing with a "controlled substance" but he is also "knowingly" breaking the law by selling it. Once again, it appears that both the alleged sale of the synthetic marijuana and it being added to the "controlled substance" list happened within days of each other while Abdel was visiting his family in Jordan.

Moreover, if Abdel did not possess the knowledge that he was breaking the law, then he could not possess the criminal intent as required by *Morissette v. United States,* 342 U.S. 246, 250 (1952), where the Supreme Court stated that "wrongdoing must be conscious to be criminal" and that this principle of criminal justice in America is "as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil".

In *Pettibone v. United States,* 148 U.S. 197 (1893), the defendants were charged with encouraging mine workers to disobey an injunction, and the Supreme Court, in reversing their conviction, stated: "It seems clear that an indictment against a person...must charge a knowledge or notice, on the part of the accused....Unless that fact exists, the statutory offense cannot be committed...and without such knowledge or notice, the evil intent is lacking." *Id.* at 206-7. This requirement of a direct and explicit allegation of knowledge of breaking the law or knowledge that a law was broken in an indictment was reiterated by the Supreme Court 50 years later in *Direct Sales v. United States,* 319 U.S. 703 (1943), where the Supreme Court reaffirmed

-12-

*Pettibone* by citing *United States v. Falcone*, 109 F.2d 579, 581 (2d Cir. 1940), *aff'd* 311 U.S. 205 (1940), where conspiracy allegations would turn innocent conduct into crimes:

> Without the knowledge, the intent cannot exist….Furthermore, to establish the intent, the evidence of knowledge must be clear, not equivocal….This, because charges…are not to be made out by piling inference on inference, thus fashioning…a dragnet to draw in all substantive crimes. *Direct Sales*, 319 U.S. at 711.

Certainly Abdel lacked both the knowledge that he was involved with the "illegal" selling of something on the "controlled substance" list, and the knowledge that he was breaking the law, so therefore, he clearly lacked the criminal intent or *mens rea* that is necessary under American jurisprudence to constitute a crime.

## IV.   ABDELMAJI DID NOT RECEIVE FAIR WARNING OR FAIR NOTICE THAT HIS CONDUCT VIOLATED ANY LAW AS REQUIRED BY THE CONSTITUTION

> "It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Cole v. Arkansas,* 333 U.S. 196, 201 (1948). Petitioner's conviction cannot, therefore, be allowed to stand." *Rabe v. Washington*, 405 U.S. 313, 315 (1972).

See, also, *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005): "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *quoting United States v. Harriss*, 347 U.S. 612, 617 (1954). "There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive expansion of narrow and precise statutory language. As the Court recognized in *Pierce* v. *United States,* 314 U.S. 306, 311 (1941), judicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate

definiteness." *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964).  In this case, the sale of synthetic marijuana was made "criminal" by DEA agents in May of 2013 while Abdel was in Jordan.

In *United States v. Marks*, 430 U.S. 188 (1977), the Supreme Court required the reversal of convictions based on an unexpected construction and judicial expansion of the state trespass statute by relying on its decision in *Bouie*, 378 U.S. at 353-54:

> "Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids. An *ex post facto* law has been defined by this Court as one 'that *makes an action done before the passing of the law, and which was innocent* when done, criminal; and punishes such action,' or 'that *aggravates a crime,* or makes it *greater* than it was, when committed.' If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Marks*, 430 U.S. at 192, *citing Bouie* at 353-54.

## A. ABDELMAJI'S PROSECUTION ALSO VIOLATES THE EX POST FACTO CLAUSE

While the *Ex Post Facto* Clause (Article I, Sections 9 and 10) is generally thought of as a limitation on the power of the legislature to create new laws, the principal on which the *Ex Post Facto* Clause is based is "the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties is fundamental to our concept of Constitutional liberty." *See United States v. Marks*, 430 U.S. 188 (1977), *citing United States v. Harriss*, 347 U.S. 612, 617 (1954); *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). As such, the right of the Due Process Clause of the Fifth Amendment protects the individual from such judicial expansion of statutes and judicial action that the legislature would be prohibited from doing under the *Ex Post Facto* Clause.  In this case, it was the DEA not Congress or the Courts that changed the law.

Similarly, in *Rabe v. Washington*, 405 U.S. 313 (1972), the Supreme Court reversed a conviction under a state obscenity law because it rested on an unforeseeable judicial construction of the statute. The Supreme Court in reversing the conviction in *Marks*, discussed the judicial expansion in *Rabe*, and stressed that "reversal was mandated because affected citizens lacked fair notice that the statute would be thus applied." *See Marks* at 192. The Supreme Court's decisions in both *Rabe* and *Marks* show that Abdel's prosecution violated the Constitution's prohibition against *Ex Post Facto* laws, even if created by a judicial expansion of the statute as was done in *Binday*. The *Ex Post Facto* Clause prohibits any prosecution by the government for conduct that was innocent when performed, and it is based on the principal that "persons have a right to fair warning of that conduct which will give rise to criminal penalties." *See United States v. Rosengarten*, 857 F.2d 76 (2d Cir. 1988), *quoting Marks*, 430 U.S. at 191. *See, also, Casillas v. Scully*, 769 F.2d 60, 65 (2d Cir. 1985), which reiterated the Supreme Court's conclusion in *Bouie v. City of Columbia*, 378 U.S. 347 (1964).

In fact, the Supreme Court in *Marks* cites another pornography case *Hamling v. United States*, 418 U.S. 87, 102 (1974), for the proposition that any judicial expansion of a statute is prohibited, whereas any judicial narrowing of a statute by the Supreme Court must be applied on a retroactive basis for the benefit of the defendant. Because the obscenity standards in *Miller v. California*, 413 U.S. 15 (1973) both helped and hurt the defendants in *Marks*, the Supreme Court had to decide what was to be applied retroactively and what was not. The Supreme Court cited *Hamling* in *Marks* for the proposition that "any constitutional principal enunciated in *Miller* which would serve to benefit petitioners must be applied in this case," while any retroactive judicial expansion of the interpretation of a statute is constitutionally prohibited. *See Marks* at 197, *citing Hamling* at 102.

-15-

Therefore, the Supreme Court's rulings in the obscenity cases make clear that judicial expansion of a statute by the courts violates the *Ex Post Facto* Clause and any positive pronouncement by the Supreme Court or the Second Circuit that benefits a defendant must be used retroactively for Abdel's benefit. The DEA should not be allowed to make innocent acts criminal and do what Congress cannot do under the Constitution.

## B. ABDELMAJI WAS NOT GIVEN ADEQUATE NOTICE OR FAIR WARNING THAT HIS CONDUCT WAS PROSCRIBED IN VIOLATION OF THE DUE PROCESS CLAUSE

Constitutional substantive due process requires that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617 (1954); *see also Kolender v. Lawson*, 461 U.S. 352 (1983); *Lanzetta v. New Jersey*, 306 U.S. 451 (1939). At this late date, the government has failed to state with particularity what act of Abdel's alone (as opposed to anyone else's conduct) was a crime:

> The Supreme Court emphasized the importance of this limitation:

> Although the [due process] doctrine focuses both on actual notice to citizens and arbitrary enforcement, [the Court has] recognized that the more important aspect of the doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections. *Kolender*, 461 U.S. at 357-58.

Imprecise laws—or imprecise applications of laws—give rise to "arbitrary and erratic arrests and convictions." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972). Both the actual notice and the fair warning requirements of the Due Process Clause were violated in this case.

Moreover, in the Supreme Court's unanimous decision in the famous *Arthur Andersen* case, the Supreme Court emphasized the principle that "fair warning should be given to the

world in language that the common world will understand, of what the law intends to do if a certain line is passed" and that "legislatures and not courts should define criminal activity." *Id.* at 696 (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931) (Holmes, J.)).

Congress may have constitutional authority to extend the application of the controlled substance statutes, but it has yet to do so, and this Court should not allow the government to usurp the role of Congress in this fashion. "Because construction of a criminal statute must be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a statute broader than that clearly warranted by the text." *Ratzlaf v. United States*, 510 U.S. 135, 148 (1994) (quoting *Crandon v. United States*, 495 U.S. 152, 160 (1990)). The guilty plea and the judgment and sentence in this case violates all of these fundamental principles of constitutional Due Process.

## C. ABDELMAJI'S INDICTMENT FAILED TO APPRISE HIM OF WHAT CONDUCT WAS UNLAWFUL AS REQUIRED BY THE SIXTH AMENDMENT

The Notice Clause of the Sixth Amendment requires that a criminal defendant must be informed of the actual nature and the cause of the accusations against him. An indictment that merely tracks the language of a statute and alleges vague criminality **but alleges no facts that actually violate the statute it charges** cannot be sustained. See, *United States v. Simmons*, 96 U.S. 360, 362 (1878):

> "...the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defence....An indictment not so framed is defective, although it may follow the language of the statute."

"Real notice of the true nature of the charge...is the first and most universally recognized requirement of Due Process." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). "Fair warning should be...in language the common world will understand, of what the law intends to do if a certain line is passed." *Arthur Andersen v. United States*, 544 U.S. 696 (2005) citing *McBoyle v United*

*States*, 283 U.S. 25, 27 (1931). "The office of the indictment demands specific facts of what conduct by the accused constitutes a crime, and that conduct must be correlated with what is prohibited by the statute and what is the very core of criminality." *United States v. Russell*, 369 U.S. 749, 764 (1962). Far from informing Abdel of the nature of the accusation, the Indictment here, attached as Exhibit Three, does not even assert the elements and facts necessary to indict someone for being part of a "conspiracy" or describe a real crime; but instead "left the prosecution free to roam at large, to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." See *Russell* at 768.   It is axiomatic that statutes creating and defining crimes cannot be extended by intendment (or by DEA Agents), and that no act, however wrongful, can be punished under such a statute unless clearly within its terms. "There can be no constructive offences, and before a man can be punished, his case must be plainly and unmistakably within the statute." *United States v. Lacher*, 134 U.S. 624 (1890). But in this case the Indictment says only that someone identified him and  seeks to punish Abdel for what he thought was "otherwise innocent conduct" that he did not cause and could not possibly foresee. See *United States v. Cleveland*, 531 U.S. 12 (2000).  The Indictment is constitutionally defective on its face and had the delivery happened in April of 2013 when Abdel allegedly talked to the undercover informant and before he left for Jordan, he would be a free man today because synthetic marijuana was not on the Controlled Substance List in April of 2013.

## V.    MY SENTENCE WAS CONSTITUTIONALLY UNREASONABLE

Your Honor should examine the sentence of probation in *United States v. Nunez*, No. 12-cr-778-2 (S.D.N.Y. 2015), involving much larger amounts of synthetic marijuana, many times larger than the amounts at issue here.  The whole purpose of the Sentencing Guidelines is to

avoid the disparity in sentencing that has happened in this case. The Court knows very well by now that the only reason that Abdel pled guilty was because his attorney told him to plead guilty and assured him that he would get little if any jail time. There is no way that Abdel would have pled guilty if he knew he would be separated from his family for eight years for a non-crime that he did not even commit. When Abdel went to Jordan in April 2013, synthetic marijuana was not on the Controlled Substance List. The person who was alleged to have made the sale to the undercover agent arranged the sale while Abdel was in Jordan and before synthetic marijuana was temporarily placed on the Controlled Substance List in May of 2013. Abdel's alleged co-conspirator received only 33 months. This disparity in sentencing is not only unreasonable, but unconstitutional as well.

See, also, the Second Circuit's recent decision in *United States v. Algahaim,* 842 F.3d 796 (2d Cir. 2016), where the case was remanded back to the district court to explore a below-Guidelines sentences due to the fact that the sentences of 21 and 30 months were so high because of the amount of loss in the case rather than just six levels for the offense itself. In this case, the 97 months is entirely based on the ratio of 1:167 in the original Sentencing Guidelines.

The whole purpose of the Sentencing Guidelines is to prevent this type of disparity in sentencing, which we know has already happened in the fact that another Muslim inmate at Canaan, Rashid Mansour, received a year and a day sentence from a different New York judge in the same Second Circuit while Abdel received 97 months. Rashid recently left Canaan after finishing his sentence of a year and one day, for the same situation as Abdel, in the same state and the same Second Circuit, but with a different judge and a different lawyer. This is what was stated in Mansour's case, where the defendant received a sentence of a year and a day for the same amount of synthetic marijuana: "The application of the 1:167 conversion ratio will likely

-19-

continue to produce inconsistent and inequitable results at sentencing by relying on downward

deviations to correct an unsound and unproven calculation. Defendants sentencing under this

ratio can receive vastly disparate sentences that depend almost entirely on a trial judge's

willingness to deviate from the guidelines-recommended range." See, e.g., Sentencing TR. at

13:4-12, *United States v. Mansour,* No. 5:13-cr-00429 (N.D.N.Y. Jan. 11, 2016), ECF. No. 252

(imposing a one year, one day sentence despite application for the ratio resulting in a guidelines

range of 46-57 months); See also, *Hossain,* 2016 WL 70583 at *5-6 (applying a 1:7 ratio, given

that "there does not seem to be any reason behind the 1:167 ratio"):

> To date, only one court has critically examined in context all of the statutory sentencing
> factors. Whether the 1:167 ratio rests upon appropriate empirical foundations. See
> *United States v. Hossain,* (1:15-cr-14034) 2016 WL 70583, AT *5-7. In *Hossain,* the
> court thoroughly analyzed the sentencing factors and concluded that, "despite the
> potential dangers of synthetic cannabinoids, and the clear need for deterrence," *id.* at *5,
> "the goals of sentencing are not achieved by imposing sentences to upwards of thirty
> years in prison for dealing in a substance that was intended to mimic marijuana and so
> new that only a few years before...it was being sold in gas stations and convenience
> stores," *id.* at *7.

Accordingly, the *Hossain* court deviated downward from the guidelines-recommended

range based in large part on the "newness of the regulation of XLR-11,...the intimacy of our

understanding of the effects of XLR-11 and other synthetic cannabinoids," *id.* at *6, and the fact

that the ratio appears to lack a sound basis. The judge in *Hossain* went on to say:

> "In considering the THC to marijuana ratio, I find it troubling that there does not seem to
> be any reason behind the 1:167 ratio. Although I asked each of the experts at the hearing,
> no one could provide me with a reason for this ratio, which has major implications in
> determining the base level of offense. After my own research and a phone call to the
> Sentencing Commission, I still could find no basis for this ratio. It appears to have been
> included in the first set of Guidelines in 1987, with no published explanation. While a
> sentence must reflect the seriousness of the offense to provide just punishment, a
> sentence based on a range that seems to have no cognizable basis in not just".

Although district courts are not required to analyze whether a sentence guideline is

supported by empirical evidence, they are charged with imposing sentences that are "sufficient

but not greater than necessary" to achieve the goals of sentencing articulated in 18 U.S.C. §3553(a). This obligation calls for greater scrutiny of unjustified effects of the 1:167 conversion ratio in sentencing synthetic marijuana offenders. The XLR-11 synthetic marijuana discussed above is the same synthetic marijuana discussed in *Hossain* and is the same compound that Mansour received a year and a day on and is the same cannabinoid still being sold at convenience stores in the Bronx under a dozen different names such as "Scooby Doo", "Smiley Face", "Bob Marley", and hundreds of others and is even available on Alibaba and other internet websites.

The inequity of the 1:167 ratio may be further exacerbated because defendants confronting it may experience overwhelming pressure to plead guilty, especially when prosecutors are willing to stipulate to sentencing factors that would lower the sentencing range under the Guidelines. See *Human Rights Watch,* "An Offer You Can't Refuse: How US Federal Prosecutors Force Drug Defendants to Plead Guilty" (Dec. 2013) (observing that prosecutors may negotiate terms that would lead to lowering sentencing, while district courts imposed, on average, three times longer sentences when defendants go to trial).

Your Honor will notice that the Judges in *Hossain* and *Mansour* cases were both very critical of the arbitrary and unscientific 1:167 ratio for synthetic marijuana versus the real thing in their opinions. Therefore, we would respectfully ask that you vacate Abdel's conviction or reduce his sentence to one year and one day as was done in the *Mansour* case, or to time served, or at the very least reduce his sentence to the same 33 months that his associate received, which is still a serious sentence for a product that is still being sold in convenience stores around the country, and was only "temporarily put on the Controlled Substance List.

-21-

## CONCLUSION

For the reasons detailed above, the Petitioner respectfully asks this Court to appoint counsel for the Petitioner to argue this case before the Court and to hold an evidentiary hearing, grant this 2255 Petition, vacate his conviction, vacate his guilty plea, and order his immediate release from prison.  Please order the government to respond to this 2255 Petition as soon as possible.

I certify under the penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

s/s Abdelmajid Lababneh
Abdelmajid Lababneh
Pro-Se Petitioner
Incarcerated Inmate
Reg. #58275-054
Federal Prison Camp Canaan
Unit G
P.O. Box 200
Waymart, PA 18472

# EXHIBIT ONE

TEXT ORDER denying 51 motion to appoint counsel: In his letter, Defendant requests that the Court appoint counsel to assist him with the preparation and filing of a motion pursuant to 28 U.S.C. § 2255. It is well settled that "the right to appointed counsel extends to the first appeal of right, and no further." Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Courts have no obligation "to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief." Johnson v. Avery, 393 U.S. 483, 488 (1969). Rather, "the initial burden of presenting a claim to post-conviction relief usually rests upon the indigent prisoner himself with such help as he can obtain within the prison walls or the prison system." Id. To be sure, district courts do have discretion to appoint counsel, but should only do so when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2). In determining whether the "interests of justice" require the appointment of counsel, the court must "first determine whether the indigent's position seems likely to be of substance." Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1985). "If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination." Id. at 61-62. In the present matter, Defendant indicates only that he would like to make a § 2255 motion and that he believes he has "several points of merit[.]" Since Defendant has not provided any information regarding the issues he intends to raise, it is not possible at this juncture to determine whether his motion is likely to be of substance. Accordingly, Defendant's motion for appointment of counsel is DENIED without prejudice. IT IS SO ORDERED. Signed by U.S. District Judge Mae A. D'Agostino on 5/3/2017.(Copy served via regular mail) (ban) (Entered: 05/03/2017)

# EXHIBIT
# TWO

U.S. DISTRICT COURT
N.D. OF N.Y.
**ORIGINAL FILED**

JAN 2 2 2014

LAWRENCE K. BAERMAN, CLERK
ALBANY

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| ABDELMAJI K. LABABNEH | ) Case No. 1:14-mJ-18 (CFH) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendant | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____ May 23, 2013 _____ in the county of _____ Rensselaer _____ in the

_Northern_ District of _New York_ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846, 841(a)(1), and (b)(1)(C) | Conspiracy to Distribute a Controlled Substance – XLR-11 |

This criminal complaint is based on these facts:
See attached Sheet

☒ Continued on the attached sheet.

_____
Complainant's signature

Caitlin J. Ostrowski, DEA Task Force Officer
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: January 22, 2014

_____
Judge's signature

City and State:   Albany, New York

Christian F. Hummel, U.S. Magistrate Judge
_____
Printed name and title

State of New York      )
                       )
County of Albany       )

     I, Caitlin J. Ostrowski, being duly sworn, depose and say:

I am a Deputy Sheriff with the Rensselaer County Sheriff's Office, and have been since 2007. Since 2008, I have also been a Task Force Officer with the Drug Enforcement Administration. have received specialized training pertaining to narcotics trafficking, undercover operations, surveillance tactics, interviewing, informant handling, and tactical searches and arrests.  I have also participated in several investigations regarding drug trafficking offenses including violations of Title 21, United States Code, Sections 841(a)(1) and 846.  I make this affidavit as part of my criminal complaint against Abdelmaji K. Lababneh ("LABABNEH"). The facts set forth herein are based upon my own knowledge as well as conversations with other law enforcement agents.

1.     I have been investigating an ongoing large scale synthetic marijuana organization since early 2013 after a confidential source of information identified LABABNEH aka Abu Khalaf, from a DMV photograph, as the source of supply for large quantities of synthetic marijuana being delivered from the Bronx to the Northern District of New York.

2.     As part of that investigation, in May 2013 I was involved in the seizure of approximately 95 kilograms of synthetic marijuana immediately after its delivery to a location in Troy, New York.   This synthetic marijuana was subsequently analyzed and found to contain XLR-11, a Schedule I controlled substance.   XLR-11 is a synthetic cannabinoid, a chemical compound that mimics THC, the active ingredient in marijuana.   When XLR-11 is sprayed onto dried herbs, creating herbal incense, and consumed by smoking or oral ingestion, it produces psychoactive effects similar to those of marijuana.

3.     The person from whom this synthetic marijuana was seized identified LABABNEH aka Abu Khalaf, from a DMV photograph, as the person who had directed him to pick up and deliver the synthetic marijuana to Troy, New York.

                                            Caitlin J. Ostrowski
                                            Task Force Officer, DEA

Sworn to before me this
22nd day of January, 2014

Christian F. Hummel
United States Magistrate Judge

# EXHIBIT THREE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.  1:14-CR-189 ▮ MAD |
|  | ) |  |
| v. | ) | **Indictment** |
|  | ) |  |
| **ABDELMAJI K. LABABNEH a/k/a** | ) | Violation:   21 U.S.C. §§ 841(a)(1) and |
| **"Abu Khalaf," a/k/a "David,"** | ) | (b)(1)(C) and 846 |
|  | ) | [Conspiracy to Possess With |
|  | ) | Intent to Distribute and |
|  | ) | Distribute a Controlled |
|  | ) | Substance] |
|  | ) |  |
|  | ) |  |
|  | ) | 1 Count |
|  | ) |  |
| **Defendant.** | ) | County of Offense:   Rensselaer |

### THE GRAND JURY CHARGES:

**COUNT 1**

[Conspiracy to Possess With Intent to Distribute and Distribute a Controlled Substance]

Between on or about May 17, 2013, and on or about May 23, 2013, in Rensselaer County in the Northern District of New York and elsewhere, the defendant, **ABDELMAJI K. LABABNEH**, and others conspired to knowingly and intentionally possess with intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). As to defendant **ABDELMAJI K. LABABNEH**, that violation involved XLR11, a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C)

All in violation of Title 21, United States Code, Section 846.

## FORFEITURE ALLEGATION

1.      The allegations contained in Counts 1 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

2.      Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Section 846, the defendant, **ABDELMAJI K. LABABNEH**, shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense.

3.      If any of the property described above, as a result of any act or omission of the defendant:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be divided without difficulty,

2

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p).

Dated:                    May 14, 2014

                                          A TRUE BILL,

                                                          Name redacted

                                          _____
                                          Grand Jury Foreperson


RICHARD S. HARTUNIAN
United States Attorney

By:     _____
        Jeffrey C. Coffman
        Assistant United States Attorney
        Bar Roll No. 517969

3