IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABDELMAJI LABABNEH, <br><br> Petitioner, <br><br> v. <br><br> UNITED STATES, <br><br> Respondent. | Criminal No. 1:14-CR-189 (MAD) <br> Civil No. 1:17-CV-722 (MAD) <br><br> **GOVERNMENT'S OPPOSITION TO PETITIONER'S MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255** |

## BACKGROUND

On May 14, 2014, a federal grand jury in the Northern District of New York returned a one-count indictment against petitioner Abdelmaji Lababneh. (Dkt. #1). The indictment charged Lababneh with conspiracy to possess with intent to distribute and to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), which violation involved XLR11, a schedule I controlled substance, in violation of 21 U.S.C. § 841(b)(1)(C), all in violation of 21 U.S.C. § 846. *Id.* On August 14, 2014, Lababneh, his counsel, and government counsel signed an agreement by which Lababneh agreed, among other things, to plead guilty to the conspiracy count in the indictment and waive various appeal rights. (Dkt. #25). That same day, Lababneh pled guilty. On June 15, 2015, the Court sentenced Lababneh principally to a 97-month term of imprisonment and a 3-year term of supervised release. Lababneh appealed his conviction, arguing that the Court: (1) erroneously determined that the temporary scheduling of XLR11 as a controlled substance was valid; (2) committed substantive error by failing to sufficiently vary his sentence; and (3) committed procedural error by calculating his base offense level using a drug equivalency conversion ratio of 1:167, however the Second Circuit affirmed Lababneh's conviction, issuing its mandate on June 9, 2016. (*See* Dkt. No. 46). At some time between June 5 2017, less than one

year before his conviction was final, and July 19, 2017, Lababneh submitted the petition,[1] which was received by the Clerk of Court for the Northern District of New York on July 19, 2017.  (*See* Dkt. No. 55).[2]

## **RELEVANT LAW**

### I.     Procedure Governing Section 2255 Motions

Title 28, United States Code, Section 2255 provides, in relevant part, that a district court may vacate, set aside a judgment of conviction, or correct a sentence "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."

The procedure under Section 2255 is straightforward.  The petitioner files a motion which "sets forth his or her legal and factual claims, accompanied by relevant exhibits: *e.g.*, an affidavit from the petitioner or others asserting relevant facts within their personal knowledge and/or identifying other sources of relevant evidence."  *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009).  Simply filing a 2255 motion does not automatically entitle a petitioner to an evidentiary hearing; to warrant an evidentiary hearing "the 'application must contain assertions of fact that a petitioner is in a position to establish by competent evidence . . . Airy generalities, conclusory assertions and hearsay statements will not suffice . . . .'"  *Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) (quoting *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987)).

---

[1] Lababneh's Petition is dated June 5, 2017.  The mailing envelope does not appear on the docket.

[2] The Petition and its accompanying memorandum will be referred to herein as "Pet." and "Mem.," respectively.

Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## II. Legal Principles Governing Guilty Pleas and Waivers of Appeal or Collateral Attack

Because the need for finality has "special force with respect to convictions based on guilty pleas," a guilty plea may be attacked on collateral review only in "strictly limited" circumstances. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). In particular, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Thus, when a defendant files a Section 2255 motion to challenge the validity of a conviction pursuant to a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). The Court applied this rule in *Broce* to hold that defendants who pleaded guilty to two indictments arising out of the same course of conduct had waived their double jeopardy claims. *Id.* at 565.

A guilty plea is an admission of all the elements and material facts of the criminal charge contained in an indictment. *See Broce*, 488 U.S. at 569 ("a plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt"). Thus, a defendant cannot ordinarily challenge his plea on the ground that there was insufficient evidence to prove an element of the offense.

A defendant who enters into a plea agreement may agree to waive the right to bring a collateral attack under Section 2255. *See, e.g., Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) (citing cases). Although agreements waiving the right to file a collateral attack are "generally enforceable," they are "subject to certain exceptions." *United States v. Cockerham*,

3

237 F.3d 1179, 1181-1182 (10th Cir. 2001).  Thus, a waiver does not encompass claims that the plea or plea agreement was unknowing or involuntary, or that the defendant received ineffective assistance of counsel in the negotiation of the plea or plea agreement.  *See id.* at 1191; *Jones v. United States*, 167 F.3d 1142, 1144-1145 (7th Cir. 1999).  Courts have held, however, that a waiver of the right to file a Section 2255 motion does apply to claims that defense counsel provided ineffective assistance at sentencing proceedings following entry of the guilty plea.  *See United States v. White*, 307 F.3d 336, 342 (5th Cir.  2002); *Cockerham*, 237 F.3d at 1191; *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001); *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000).

An appeal waiver is enforceable if it was entered into knowingly, voluntarily and intelligently.  *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).  To permit an appeal from a defendant "who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal" would "render the plea bargaining process and the resulting agreement meaningless."  *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004).  Similarly, a waiver of the right to collaterally attack a conviction by a petition under § 2255 is enforceable.  *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001).  A waiver of appellate or collateral attack rights does not, however, foreclose an attack on the validity of the process by which the waiver has been procured – such as the negotiation of or entering into the plea agreement. *Frederick v. Warden, Lewisburg Correctional Facility*, 308 F.3d 192, 195–96 (2d Cir. 2002), *cert. denied*, 537 U.S. 1146 (2003).  However, "the Supreme Court has instructed that, with regard to voluntariness, a guilty plea 'must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to

prosecutor's business (e.g., bribes).'" *United States v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008) (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)).  Furthermore, a plea is deemed intelligent "if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way . . . ."  *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988).

## ARGUMENT

### I. Petitioner Did Not Receive Ineffective Assistance of Counsel, and Made His Guilty Plea Knowingly, Intelligently, and Voluntarily.

Petitioner claims that his attorney provided ineffective assistance of counsel, that his plea was not knowingly, intelligently, or voluntarily given, that he did not receive "constitutional fair warning or fair notice," and that "there was no mens rea – criminal intent in this case."  (Pet. at pp. 5-9).  Petitioner and "all of the inmates and friends outside helping [him] put [his] 2255 Petition together," allege that he "speaks broken English," "does not read or write English well enough to properly defend himself," "did not knowingly commit any crime," and "did not knowingly plead guilty."  (Mem. at 1).  They further allege that he "was being detained awaiting trial and was told by his attorney to 'take the deal and you go home today' and 'not to worry' you will get no more than probation or six months to a year…."  (Mem. at 2).  They further allege that his "attorney lied to him, failed to negotiate a decent plea agreement," and "gave [him] the terrible advice to take the deal."  (*Id.*).  They further allege that his attorney "lied to him about the possible jail time that he would receive."  (*Id.*).  Petitioner claims that he "pled guilty to selling synthetic marijuana only because his attorney told him if he pled guilty, he could go home immediately, and that he would not get a lot of jail time.  He was told he would get time served, probation as others had received, or six months or less."  (*Id.* at 4).  Petitioner also claims that the only reason he entered a guilty plea "is because his constitutionally ineffective attorney

5

promised him that he could go home immediately and that he would only get 5 or 6 months, despite the fact that his plea agreement, which [he] could not even read, said up to 20 years and a fine of up to $1,000,000." (*Id.* at 5).

With respect to Petitioner's claim that he did not have the necessary *mens rea* to commit the offense, his argument is based upon *McFadden v. United States*, 135 S.Ct. 2298 (2015). However, *McFadden* examined the Controlled Substances Analogue Enforcement Act of 1986, which "identifies a category of substances substantially similar to those listed on the federal controlled substances schedules and then instructs courts to treat those analogues, if intended for human consumption, as controlled substances listed on schedule I for the purpose of federal law." *Id.* at 2302 (citation omitted). Specifically, *McFadden* addressed, on direct appeal, the knowledge necessary for a conviction under § 841(a)(1) when the controlled substance at issue was an analogue, not a scheduled controlled substance. *See id.* at 2303. Here, however, Petitioner was charged with and pleaded guilty to a conspiracy involving a Schedule I controlled substance, not a controlled substance analogue. The indictment to which he pleaded guilty alleged that he "and others conspired to knowingly and intentionally possessed with intent to distribute and to distribute a controlled substance." (Dkt. No. 1). The indictment further specified that the violation "involved XLR11, a schedule I controlled substance." (*Id.*). The defendant admitted, as part of his plea agreement, that purpose of the conspiracy was to "accomplish the unlawful purpose of possessing with intend to distribute and distribute a controlled substance described in Count I." (Dkt. No. 25 at ¶ 4(a)). He further admitted that, he "knew the purpose of the agreement, and then deliberately jointed the conspiracy." (*Id.* at ¶ 4(b)).

Petitioner's allegations that his attorney lied to him about the sentence he would receive, his understanding of the plea agreement and his potential sentence, his attorney's efforts to

6

negotiate a more favorable plea agreement, and even his ability to read and understand English, are simply false. *See* Affidavit of Terrence L. Kindlon, attached hereto as Exhibit 1.[3] As Mr. Kindlon explains, among other things:

> Contrary to Mr. Lababneh's assertion, I never told Mr. Lababneh that that he would receive a sentence of no more than probation, or six months, or a year. Rather, on several occasions I explained to Mr. Lababneh that we were not in a state court, where such plea bargains for specific sentences were possible, but that we were in federal court, and thus were dealing with federal sentencing guidelines, which were used to calculate the range of his sentence and could be far greater. I informed Mr. Lababneh that his guidelines range could be as high as 210 to 240 months of imprisonment if he did not receive credit for acceptance of responsibility, or 151-188 months if he did receive credit for acceptance of responsibility – due to the way the sentencing guidelines scored the weight of the synthetic cannabinoid in this case. I also explained that, while I would make arguments at sentencing concerning both the fact that synthetic cannabinoid was added to the list of controlled substances while he was in jail, and the fact that its 1:167 conversion ratio for purposes of the guidelines overrepresented the seriousness of the offense, the court would decide his sentence based, in part, on the guidelines. I also conveyed to Mr. Lababneh the government's indication that, if the case proceeded to trial, the government would seek to supersede the indictment with an additional count charging distribution of a controlled substance analogue, which would have increased the total statutory maximum sentence to 40 years and potentially increased the guidelines range and his sentence.

*Id.* at ¶ 3.

Petitioner's allegations are further belied by the fact that he was informed at the time of his plea that the maximum statutory term of imprisonment was 20 years. Plea Hearing Tr. at 17, attached hereto as Exhibit 2. He was further informed that the government's estimate of his sentencing guidelines range was 151 to 188 months. *See id.* at 18. The Court informed Petitioner that it would consider the guidelines in determining his sentence. *See id.* Further, in his plea agreement, Petitioner waived his right to appeal any sentence of 240 months or less, except that

---

[3] Mr. Kindlon, who is out of the country, has signed his attached affidavit with his electronic signature. Upon his return, the government will submit his affidavit with his handwritten signature.

he reserved the right to challenge the 1:167 conversion ratio. (*See* Dkt. No. 25 at ¶ 7(b)). Petitioner confirmed at the time of his plea that he understood the 240-month appeal waiver. *See* Ex. 2 at 15-16.

> The Court asked Petitioner:
>
> Has your lawyer or any Assistant United States Attorney, any Government agent or anyone else made any promise that you would be treated leniently or any other kind of promise to induce you to plead guilty, other than what is contained in the plea agreement and the addendum, if any?

*Id.* at 10. Petitioner responded: "No." *Id.*

## II. The Court Should Dismiss the Petition Without a Hearing.

A district court has the authority to dismiss a motion to vacate under Section 2255 without a hearing if the record conclusively shows that the petitioner is not entitled to relief. 18 U.S.C. § 2255; *see also Pham v. United States*, 318 F.3d 178, 184 (2d Cir. 2003) (noting that the district court is entitled to rely on court records, affidavits, and letters in determining how to address a motion to vacate). Furthermore, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *Puglisi*, 586 F.3d at 213 (quoting Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b)).

The Court is not required to "conduct a 'full-blown testimonial hearing,' as it is 'within the district court's discretion to choose a middle road' that adequately expands the record without 'the needless expenditure of judicial resources.'" *Davis v. United States* 558 F. App'x 127 (2d Cir. 2014) (summary order) (citing *Puglisi*, 586 F.3d at 215, and *United States v. Chang*, 250 F.3d 79, 86 (2d Cir. 2001). Instead, "[w]hen an attorney's affidavit credibly contradicts a habeas petitioner's ineffective assistance of counsel claim, the Court is entitled to deny the petition without holding an evidentiary hearing." *Berrios v. United States*, No. 07-CV-4441, 2009 WL

8

2226757, at *3 (E.D.N.Y. 2009) (citing *United States v. Chang*, 250 F.3d 79, 86 (2d Cir. 2001)). Defense counsel's affidavit does just that and therefore a testimonial hearing is unnecessary.  See *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000) (to merit a hearing, the defendant need not prove that his claim will succeed, but he must establish that it is "plausible").

Here, Petitioner's allegations are belied by not only Mr. Kindlon's affidavit, as set forth above, but by Petitioner's own statements at the time of his plea.

Accordingly, the Court should dismiss the petition without a hearing.

## CONCLUSION

For the foregoing reasons, Lababneh's petition for relief pursuant to 28 U.S.C. § 2255 should be denied.


Dated:   August 31, 2017                              Respectfully submitted,

                                                      GRANT C. JAQUITH
                                                      Acting United States Attorney


                                            By:    */s/ Jeffrey C. Coffman*
                                                   Jeffrey C. Coffman
                                                   Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2017, I electronically filed the foregoing opposition with the Clerk of the District Court using the CM/ECF system, and also caused to be deposited a copy into the U.S. Mail addressed to:

Abdelmaji Lababaneh
Reg. #58275-054
Federal Prison Camp Canaan
Unit G
P.O. Box 200
Waymart, PA 18472

                                       */s/ Jeffrey C. Coffman*
                                       Jeffrey C. Coffman